*In the Matter of the Petition of* Rio E. Medbury *for a Writ of Habeas Corpus.*

Rio E. Medbury, *Appellant,* v. William A. Condon, *Respondent.*[1]

*Geisness & Smythe,* for appellant.
*John M. Wilson,* for respondent.

Main, J.—This was a *habeas corpus* proceeding instituted in the superior court for the purpose of obtaining the custody of a minor child. After a trial upon the merits, the court dismissed the petition and the petitioner appealed.

[1]Reported in 73 P. (2d) 1340.

The appellant, Rio E. Medbury, formerly Rio E. Condon, and William A. Condon, the respondent, were married in the state of Montana January 16, 1927, came to this state sometime during the year 1927, and thereafter resided at Port Angeles, in Clallam county. As a result of the marriage, one child was born, a boy, who, at the time of the trial of this case, was five years of age.

The parties continued to reside together in Port Angeles until in November, 1935, when, trouble having arisen between them, the appellant went to Wyoming, where her mother resided. Prior to going, she had learned that the period of residence required in that state in order to obtain a divorce was sixty days. At the end of the sixty-day period, the appellant there instituted an action for divorce, and a decree was entered March 16, 1936. About two weeks thereafter, she returned to this state and went to her sister's home in Bremerton, in Kitsap county. While the appellant was away, the child was with her.

A short time after she returned, she became the housekeeper for one Lee Medbury, who resided in the city of Bremerton, a short distance from where the appellant's sister lived. While acting as the housekeeper for Medbury, she spent the nights at her sister's home. Prior to going to Wyoming, the appellant from time to time, when visiting her sister, met Medbury in company with other friends. June 7, 1936, Medbury obtained a final decree of divorce from his then wife, and he and the appellant were married July 11, 1936.

The appellant says that she went to Wyoming with a *bona fide* intention of remaining there and establishing a permanent residence, hoping to obtain employment. Not having been able to obtain employment and having received a letter from her sister stating

that the latter thought employment could be obtained in Bremerton, she returned. After the marriage to Medbury, the appellant permitted the child to visit his father in Port Angeles. The last time such a visit was made, the child was not returned, as the father says, because the boy did not want to go back. This proceeding by the appellant followed, for the purpose of obtaining the custody of the child, as above indicated.

The issue in the superior court made by the record, as well as the issue upon this appeal, was whether the decree of divorce obtained in Wyoming was valid. If it was a valid decree, the judgment of the superior court cannot be sustained. On the other hand, if that decree was invalid, then the judgment should be affirmed.

Whether that decree was valid depends upon whether the appellant went to Wyoming with the *bona fide* intention of remaining there and establishing a permanent residence. If she did go for such purpose, the fact that she intended to bring an action there for divorce and knew of the period of residence required in that state, which would enable her to obtain a decree in a shorter period of time than one could be obtained under the laws of this state, would not be a controlling circumstance. 19 C. J. 370; *Colburn v. Colburn,* 70 Mich. 647, 38 N. W. 607; *Albee v. Albee,* 141 Ill. 550, 31 N. E. 153.

The final question, then, for determination is whether, under the evidence in this case, the appellant went to Wyoming with the *bona fide* intention of establishing there a permanent residence. After giving diligent consideration to the evidence, the trial court, in a memorandum opinion, said:

"After a careful consideration of the evidence in this case, the court just cannot believe the statements of the petitioner, that she went to the state of Wyoming to make her permanent abode, but on the contrary,

the court is of the opinion that the visit to Wyoming was solely for the purpose of procuring a divorce. Much as the court dislikes to nullify a divorce decree, where one of the parties has remarried, the evidence and circumstances in this case show conditions under which the court does not have any other alternative."

After reading and considering all the evidence, as it appears in the record, we are in accordance with the views expressed by the trial court. To hold that the appellant went to Wyoming with the *bona fide* intention of establishing there a permanent abode, would be a very great tax upon credulity. The Wyoming decree cannot be sustained.

▮ It has been suggested here that, notwithstanding the invalidity of the decree of divorce, this case should be remanded to the superior court to consider the matter of the custody of the child as between the respective parents, who are still husband and wife. As above pointed out, the only issue in the superior court was whether the Wyoming decree was valid, and, if it was, custody of the child was sought on that basis. In the superior court, it was stipulated that both parties were fit and proper persons to have the custody of the child, who is neither delinquent nor dependent. The case here should be disposed of on the same issue that was presented in the superior court. The appellant having failed in this proceeding, we have no way of knowing whether she desires to wage a further contest over the custody of the boy.

While the case is heard here *de novo,* it was not an original proceeding in this court, as already appears, but was first instituted in the superior court from the judgment of which court the case comes here by appeal.

The judgment appealed from will be affirmed.

STEINERT, C. J., MILLARD, BLAKE, GERAGHTY, and ROBINSON, JJ., concur.

466 

BEALS, J. (dissenting in part)—I am in accord with the foregoing opinion, save in one particular. The superior court, having acquired jurisdiction over the parties and over the person of their minor child, should have proceeded further than it did, and made some order fixing at least the temporary custody of the child. Unfortunately, the parents had separated, each, however, agreeing that the other was a fit and proper person to have the custody of their son. It appears then, *prima facie,* that the right of each parent to at least see the child should be carefully preserved. Upon termination of this proceeding, either parent may defeat the jurisdiction of the courts of this state to determine the custody of the child by removing the boy to some other jurisdiction. The matter should not be left open to such a possibility. The jurisdiction of the superior court, having once attached, should have been maintained until the matter could be definitely settled.

I accordingly dissent from so much of the opinion as lays down a rule contrary to the views herein expressed.

HOLCOMB and SIMPSON, JJ., concur with BEALS, J.