[No. 29932. ·Department One. May 29, 1946.]

THE STATE OF WASHINGTON, *on the Relation of Howard R. Marthens, Plaintiff*, v. THE SUPERIOR COURT FOR JEFFERSON COUNTY, *Ralph Smythe, Judge, Respondent.*[1]

[1]Reported in 169 P. (2d) 626.

*Monheimer, Schermer & Mifflin (D. Van Fredenberg,* of counsel), for relator.

*Kennett & Reischling,* for respondent.

CONNELLY, J.—Relator, Howard R. Marthens, a resident of San Francisco, California, brings this proceeding to this court by way of a petition for a writ of certiorari or, in the alternative, for a writ of prohibition, directed to the Honorable Ralph Smythe, judge of the superior court for Jefferson county, restraining him from assuming jurisdiction or hearing further proceedings in a cause pending in that court, entitled Barbara Marthens, plaintiff, v. Howard R. Marthens, defendant, in which plaintiff seeks a decree awarding to her the custody of two minor children of the parties.

The facts which control the decision in this matter are set forth in the complaint of Barbara Marthens filed in the superior court for Jefferson county and are supplemented by affidavits supporting and resisting the present application for extraordinary relief. They seem to be undisputed in the following particulars:

Barbara Marthens and her minor children reside in Port Townsend, Jefferson county, Washington. She and her husband, Howard R. Marthens, father of their minor children, were divorced in September, 1943, by virtue of an interlocutory judgment (as it is referred to in the California statutes) entered in the superior court for San Mateo county, state of California. The custody and control of the minor children was awarded to Barbara Marthens by such interlocutory judgment, which also provided that the two children should not be removed from the state of California except on order of the superior court for San Mateo county. The final judgment was silent as to restricting the removal of the children from that state without order of the court.

The plaintiff, without order of court, did remove the children from the state of California to the state of Washington, and, thereafter, the father, relator herein, came to the state of Washington and removed the children from this jurisdiction to the state of California. His authority

for this action was an *ex parte* order entered, upon his application, by the superior court for San Mateo county, authorizing him "to use such means as may become necessary to obtain the physical custody and possession of said children," and requiring Barbara Marthens to show cause why custody of the children should not be awarded to relator herein.

Thereafter, a hearing was again had in the divorce action in the superior court for San Mateo county to determine the custody of the children. Both parties were present at this hearing, evidence was taken, and the court made an independent investigation as to the fitness of Barbara Marthens to have custody of the minor children. This investigation was through a social welfare organization. At the conclusion of the hearing, the California court entered an order awarding custody of the children to the father, relator herein. No appeal was taken by Barbara Marthens from this last order of the superior court for San Mateo county. No subsequent proceedings were had in the superior court for San Mateo county in behalf of Barbara Marthens for a further modification of the court's decree relating to the custody of the two minor children.

The order awarding custody to the father had been entered in San Mateo county on June 27, 1945. In September, 1945, Barbara Marthens, without leave of court and in defiance of the court's order and solely upon her own responsibility, and without notice to relator herein, again removed the children from the state of California to the state of Washington. Not until December 5, 1945, when Howard R. Marthens was served with summons and complaint in the action instituted by Barbara Marthens in Jefferson county, Washington, was he apprised of the whereabouts of his children.

Howard Marthens filed a special appearance in the action pending in Jefferson county, and, under his special appearance, moved to quash the service of summons and complaint in that action made upon him in California, upon the ground that the court did not have jurisdiction of the subject matter of the action for the reason that the children,

whose custody was and is the subject matter of the action, were not domiciled in the state of Washington. The trial judge denied the motion, and the present application for extraordinary relief, predicated upon the contention that the superior court for Jefferson county is exceeding its jurisdiction, is brought to this court.

■ The determining factor in the entire proceedings grows out of the question: Were the Marthens' children legally domiciled in the state of Washington at the time their mother instituted her action in Jefferson county seeking a decree awarding custody of them to her?

Under our holdings in *Jones v. McCloud,* 19 Wn. (2d) 314, 142 P. (2d) 397, and *Motichka v. Rollands,* 144 Wash. 565, 258 Pac. 333, the answer must be in the negative.

Respondent contends that other decisions of this court have recognized jurisdiction in the courts of this state despite the entry of a decree awarding child custody in a sister state. In support of this contention, he cites *McClain v. McClain,* 115 Wash. 237, 197 Pac. 5, 202 Pac. 173; *In re Penner,* 161 Wash. 479, 297 Pac. 757; *In re Medbury,* 192 Wash. 462, 73 P. (2d) 1340.

In *Jones v. McCloud, supra,* however, this court clearly states the primary test of jurisdiction in cases of this character and, in referring to the cases cited by respondent, lays down the rule that, in each case involving the custody of children awarded by a decree of a sister state and sought to be changed in the courts of this state, the jurisdiction of the court must be controlled by the domicile or lack of domicile of the children in this state. Supporting this proposition, we find the following language in the *Jones* case (p. 321):

"While this court, in several cases to which we shall refer, has held that the courts of this state have jurisdiction, in a proper case, to hear all relevant testimony offered by either party in regard to the custody of a minor child domiciled in this state, and enter such judgment as will be for the best interests of the minor, even though the judgment be different from that entered by a sister state, where it is shown to the courts of this state that the condition of the parties has so changed since the entry of the judgment by the sister state that the welfare of the minor re-

quires that the courts of this state hear and determine the question presented; *yet we think that, included in the question presented, there is really the further question of whether or not the minor did in fact have a residence or a bona fide domicile in this state.*

*"While not all of the cases discuss very fully, and some of them not at all, the question of domicile or residence, nevertheless the question is there, and we think considered, whether expressly referred to or not."* (Italics ours.)

In that case, Jones and wife, who were residents of the state of Oregon, became parties to a divorce action in which a decree of divorce was entered, awarding custody of their minor child to the father, with the right of visitation and temporary custody awarded to the mother during the school vacation months of June, July, and August. During the time that the mother had temporary possession of the child, she removed him to Kitsap county, Washington, and refused to return him to the father in Oregon at the end of the vacation period. The father instituted his action in Kitsap county, and the court considered it as an application for a writ of *habeas corpus*.

A full hearing was had, in which the trial court denied the writ and awarded custody of the child to the mother. This court reversed the trial court and, in doing so, used the following language:

"While we are of the opinion that there was no such change of conditions shown to exist in the instant case as to warrant the trial court in entering the decree herein, however we are convinced that, in this case the residence and domicile of appellant having at all times been in Oregon, and it appearing that under the divorce decree the custody, care, and control of the minor was awarded to appellant, and it further appearing that respondent, under the decree, was only permitted to have the minor during the months of June, July, and August, and that, at the time she obtained possession of the minor, it was with no thought on the part of appellant that she would take him out of the state, or that it was to be other than a temporary possession, *the minor never became a resident of, nor can it be said he was domiciled in, the state of Washington, regardless of what respondent may claim relative to her having become a resident of this state. The residence and domicile of the*

*minor remained in the state of Oregon, where appellant resided and was domiciled."*   (Italics ours.)

The opinion cites in support of the above *In re Burns,* 194 Wash. 293, 77 P. (2d) 1025, wherein this court uses the following significant language:

"Whether the changed conditions, occasioned by appellant's remarriage and change in domicile to this state, require a further modification of the terms of the interlocutory and final decree of divorce with respect to the removal of the child from California or of the order of June 26, 1936, in regard to the education and the right of the father to the companionship of the child at stated intervals, is a matter for the California court to decide. Being in possession of all of the facts, the California court can best determine the present fitness of the father with respect to the custody of the child and reexamine its award of the custody of the child, and inquire into the desirability of permitting the father to have the child at stated periods in the light of the changed conditions."

In support of the rule announced here, the language of this court in *Motichka v. Rollands,* 144 Wash. 565, 258 Pac. 333, is particularly apt. In that case, a decree of divorce had been entered in an action instituted in Flathead county, Montana, between the parents of the minor whose custody was in issue. Custody of the child, Eva Irene, was awarded to the father by the terms of the decree, with the right of temporary possession given to the mother during one half of the school vacation period. Thereafter, the mother moved to the state of Washington, and the father, in compliance with the terms of the decree permitting the mother to have possession of Eva Irene during a portion of the vacation period, sent her to her mother in this state. The mother refused to return the child at the end of the vacation period. The father came to Chelan county, where the mother and child were residing, and instituted his action against the mother, seeking custody of the minor. The relief sought by the father was denied and the court entered an order awarding the minor child to the custody of the mother. On appeal, this court said:

"But no decision has come to our notice holding or suggesting that the courts of one state may permanently

assume general guardianship over a minor temporarily sojourning in the state, who is a resident of, or has its domicile in, another state. While this is a habeas corpus proceeding in form, it is, in substance, but a controversy between these parties over the rightful custody of Eva Irene; and the judgment rendered in this case is, in substance, an awarding of her to respondent and in effect permanently depriving appellant of the custody of the child and of his right to take the child back to Montana the place of his and its residence and domicile. It seems to us that, under the circumstances here shown, the decree of the Montana court awarding Eva Irene to appellant must be given full faith and credit and recognized as a final adjudication on that question until modified by that court, or until Eva Irene ceases to have her residence and domicile in the state of Montana."

■ The complaint of the mother in the case at bar, filed in the superior court for Jefferson county, seeks to allege error and fraud in the California proceedings, because the trial judge had considered what is designated as hearsay evidence, in the form of reports of social welfare workers, relating to the fitness of the mother to have custody of her children, without right or opportunity of the mother's counsel to cross-examine the social welfare workers who had rendered such reports. However, these matters, considered in the light most favorable to the mother's contention, are not sufficient to confer a domicile in Washington upon the children or to warrant the courts of Washington in interfering with the decree of the California court. If they constituted errors of law or violation of the rules of evidence, as established in the courts of California, they were properly reviewable upon appeal in California.

Plaintiff's complaint, likewise, alleges certain misconduct on the part of relator in threatening to prevent her from earning a living in California. We must assume, however, that Barbara Marthens either presented evidence on these matters to the trial court in California or had full opportunity to do so, and should have done so if she did not, and that the order of the California court, therefore, is *res adjudicata* so far as the courts of Washington are concerned.

■ Respondent contends that the mother's allegations

of change of circumstances and conditions affecting the welfare of the children, arising subsequent to the California order awarding their custody to the father, are sufficient to clothe the superior court for Jefferson county with jurisdiction of her application. True, she alleges, as a bald conclusion, that the welfare of the children requires that the superior court for Jefferson county take jurisdiction of all of the matters and things alleged in her complaint, but no facts are alleged which, in our opinion, constitute an allegation of changed conditions warranting interference by the Washington courts. She alleges that she removed the children from California because she had concluded that she could not oppose the wealth of her husband and his sister in the California court, and had further concluded that her husband, his sister, and the California court "were about to railroad her into an insane asylum." She alleges further that her husband has employed a detective to spy upon her and the children at Port Townsend, and that, because she fears the detective, she and the children are virtual prisoners in her own home.

Her complaint contains no allegations referring to change of health, school, influence, housing, comfort, well-being, or general welfare of the children, and fails to allege any imminent dangers threatening the children. The rule is well established that courts of the asylum state where the children are resident may assume jurisdiction where there is a showing of change of conditions and circumstances arising since the entry of a decree in a sister state determining their custody. 17 Am. Jur. 521, 522; 107 A. L. R. 642; 116 A. L. R. 1306; *In re Jiranek,* 267 App. Div. 607, 47 N. Y. S. (2d) 625; *Miller v. Schneider,* 170 S. W. (2d) (Tex. Civ. App.) 301; *Freund v. Burns,* 131 Conn. 380, 40 A. (2d) 754. This rule is likewise recognized in *Jones v. McCloud, supra.* Our holding is that the plaintiff mother fails to bring her complaint within the rule.

The order of the California court awarding custody of the children to the father reads as follows:

"The order to show cause in the above entitled matter having come on regularly for hearing on Monday, the 28th

day of May, 1945, and evidence both oral and documentary having been presented to the above entitled Court on behalf of both parties above named, plaintiff being represented by her attorney Joseph F. O'Malley and defendant being represented by his attorney Norman S. Menifee, and the Court having fully considered the evidence;

"It appearing from the evidence presented at the hearing and from the report of the Department of Social Welfare in said matter that the plaintiff above named is at this time unfit to have the care and custody of the minor children of the parties and it further appearing that the defendant above named is a fit and proper person to have the custody and control of said minor children, and good cause appearing therefor

"It is Hereby Ordered, Adjudged and Decreed that the interlocutory decree of divorce in the above entitled matter heretofore entered be, and the same is hereby modified by providing that the care, custody and control of John Francis Marthens and Sue Elizabeth Marthens, the minor children of the parties hereto, be, and the same is hereby awarded to defendant Howard R. Marthens with the right and privilege of plaintiff to visit said children at reasonable hours and times.

"It is Further Ordered, Adjudged and Decreed that the defendant Howard R. Marthens be relieved of any further payment to Barbara Marthens for the support and maintenance of said minor children.

"It is Further Ordered that defendant pay to Joseph F. O'Malley, attorney for Barbara Marthens, the sum of $100.00 as and for attorney's fees.

"Dated: June 27, 1945."

Plaintiff, Barbara Marthens, was present in court and represented by her attorney during the trial which culminated in the foregoing order.

This case is unique in one respect and differs from many of the other cases dealing with the questions which are involved here. In the majority of those cases, the parent, who had been awarded custody by a decree in a sister state and deprived of it by the surreptitious removal of the child by the opposite spouse, instituted the action seeking child custody either in *habeas corpus* or in a form which raised anew the issue of right of custody. Here, the mother, disappointed and aggrieved at the decree of the California

court awarding custody of the children to the father, without leave of court, removed them to the state of Washington, and then instituted her action in the Jefferson county court on an averment of facts in her complaint which clearly shows that, although the children were physically present with her in Jefferson county, their legal domicile was in California.

Article 4, § 1, of the constitution of the United States provides:

"Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state. . . ."

This constitutional provision is given recognition in our cases, particularly in the last expression from this court on the question now before us as found in *Jones v. McCloud, supra.*

"Many of the later cases give support to the rule stated in the earlier annotations that, except as fraud or want of jurisdiction may affect their validity, custody provisions of a divorce decree are to be given full effect in other states as to the right to custody under the circumstances existing when the decree was rendered." 116 A. L. R. 1300.

The question of the presence or absence of jurisdiction, depending upon the domicile of the children whose custody is in issue, is squarely before the court in this proceeding. To hold that the superior court for Jefferson county, under the facts shown in Barbara Marthens' complaint and in the affidavits filed in support of, and resistance to, the application for extraordinary relief in this proceeding, has jurisdiction to determine the custody of the children of the parties, means that we must hold that the children are legally domiciled in Washington. To do this would render meaningless the decision of this court in *Jones v. McCloud, supra.* It would likewise render meaningless and ineffective in the courts of this state the "full faith and credit" clause of the constitution of the United States in cases of this character.

As a practical matter, it would make the state of Washington and its courts a haven of refuge for residents of all other states of the Union who might receive an unfavorable

decision in a divorce action depriving them of custody of their children. To so hold would place a premium upon the surreptitious and constant removal of children from their domiciles in neighboring states and would result in endless litigation in this state over the custody of minor children, when such custody had already been determined by the courts of the sister states.

For the reasons stated, it is ordered that the writ of prohibition shall issue and shall provide that the respondent judge of the superior court for Jefferson county is enjoined from proceeding further in the action entitled Barbara Marthens, plaintiff, v. Howard R. Marthens, defendant, being cause No. 5361 of the files of the clerk of the superior court for Jefferson county. It clearly appears that relator is entitled to have immediate possession of his children, as provided by the order of the superior court for San Mateo county, California, awarding such custody to him.

BEALS, C. J., STEINERT, ROBINSON, and JEFFERS, JJ., concur.

